# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# NORTHERN DIVISION

HOMER GOODWIN                                                                                                  PLAINTIFF
*Individually and doing business as*
GOOD TRUCKING

V.                                                  CIVIL ACTION NO. 3:19-CV-447-CWR-LRA

PROGRESSIVE GULF INSURANCE                                      DEFENDANTS
COMPANY, *et al.*

## ORDER

Before the Court is Plaintiff Homer Goodwin's Motion to Remand. Defendant Progressive Gulf Insurance Company removed the case to this Court pursuant to diversity jurisdiction, claiming that Defendants Jessica Wilson and Lighthouse Insurance Services, LLC were improperly joined. For the following reasons, Goodwin's Motion is denied and his claims against Wilson and Lighthouse are dismissed.

**I.**     **Background**

Goodwin owns and operates a gravel hauling business called "Good Trucking." He alleges that Tammy Goodwin, his secretary and office manager – acting on his and Good Trucking's behalf – visited Defendant Jessica Wilson on August 22, 2017, to purchase insurance for a gravel dump truck Goodwin planned to use in the business.

Wilson owned and operated Defendant Lighthouse Insurance Services, LLC, an independent insurance agency. Wilson and Lighthouse acted as agents for Defendant Progressive Gulf Insurance Company.

Wilson told Tammy "that she was an agent for Progressive and she would write the insurance coverage through Progressive providing comprehensive coverage." Wilson completed

the application for insurance and spoke with Progressive about issuing the policy. She also asked Tammy what amount of coverage was needed in the event of a total loss of the truck. Goodwin requested $20,000. Goodwin ultimately agreed to pay a premium of $517.20 per month for the insurance coverage.

Goodwin says he paid the first month premium on August 23, 2017, prior to receiving any insurance policy or other document providing details of his policy. Instead, he relied on Wilson's representations and purchased the Progressive policy from her with the belief that he had $20,000 in coverage for the loss of the truck. In truth, he was purchasing only $7,500 in coverage.

It is undisputed that Progressive sent Goodwin a declaration page summarizing the insurance coverage amounts on August 23, 2017. Progressive sent additional declaration pages on August 25, August 26, September 2, and September 7, 2017.[1] It is also undisputed that on the second page of each document, the following language is included:

> Stated Amount:     *$7,500 (including Permanently Attached Equip)
>
> . . .
>
> *A vehicle's stated amount should indicate its current retail value, including any special or permanently attached equipment. In the event of a total loss, the maximum amount payable is the lesser of the Stated Amount or Actual Cash Value, less deductible. Be sure to check stated amount at every renewal in order to receive the best value from your Progressive Commercial Auto policy.

Rather than sending Goodwin a physical copy of the insurance policy, Progressive published a "Commercial Automobile Policy" online that was available to Goodwin.

---

[1] Progressive sent Goodwin new declaration pages after changes were made to his policy. For example, the August 25, 2017, declaration page notes that Goodwin changed the policy to include two additional insureds.

2

Goodwin's dump truck was totally destroyed by fire on February 19, 2018. He made a claim to Progressive for the loss. He alleges Progressive asked for "certain documents and information to process his claims, including the bill of sale wherein he purchased the truck," which noted that the truck was purchased for $20,000. Goodwin provided the documentation in March 2018. Progressive did not respond to Goodwin's claim until December 20, 2018, when it advised Goodwin that it would pay "the sum of $7,500.00 minus the deductible of $2,500.00."

Goodwin filed this suit on May 23, 2019, in the County Court of Hinds County, Mississippi. He made several claims against the defendants collectively: (1) breach of contract; (2) bad faith denial of insurance benefits; (3) fraudulent misrepresentation; (4) negligent misrepresentation; (5) negligence; (6) gross negligence; and (7) fraudulent inducement. Goodwin sought compensatory and punitive damages in the amount of $200,000.

Progressive filed a notice of removal on June 26, 2019, alleging that Goodwin improperly joined Lighthouse and Goodwin to defeat diversity jurisdiction. Goodwin disagrees. He argues that complete diversity does not exist because the defendants are properly joined and, therefore, that this Court lacks jurisdiction over the case. Goodwin further argues that this Court should remand because "all of the defendants served with process in this case did not join in the removal petition."

## II. Legal Standards

### A. Removal

To properly remove an action pursuant to 28 U.S.C. § 1441(a), a party must demonstrate that original jurisdiction lies in federal court. *Energy Mgmt. Servs., LLC v. City of Alexandria*, 739 F.3d 255, 258 (5th Cir. 2014). "A federal district court may exercise original jurisdiction

over any civil action that either satisfies diversity requirements or that arises under the federal constitution, statutes, or treaties." *Id.* at 258–59 (citing 28 U.S.C. §§ 1331, 1332, 1369).

"To remove a case based on diversity, the diverse defendant must demonstrate that all of the prerequisites of diversity jurisdiction contained in 28 U.S.C. § 1332 are satisfied." *Smallwood v. Ill. Cen. R.R. Co.*, 385 F.3d 568, 572 (5th Cir. 2004) (en banc). Section 1332 provides that "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a)(1).

"[A]ny contested issues of facts and any ambiguities of state law must be resolved in the [non-removing party's] favor." *Cuevas v. BAC Home Loans Servic., LP*, 648 F.3d 242, 249 (5th Cir. 2011) (citation omitted). Because removal raises significant federalism concerns, the removal statute is strictly construed and all doubts "as to the propriety of removal" should be resolved in favor of remand. *In re Hot-Hed Inc.*, 477 F.3d 320, 323 (5th Cir. 2007) (citations omitted).

Here, the parties present no dispute regarding the amount in controversy. Instead, they raise the issue of whether Lighthouse and Wilson were improperly joined to defeat diversity jurisdiction.

### B. Improper Joinder

"The improper joinder doctrine constitutes a narrow exception to the rule of complete diversity." *McDonal v. Abbott Lab.*, 408 F.3d 177, 183 (5th Cir. 2005). The doctrine implements the federal courts' "duty to not allow manipulation of our jurisdiction." *Smallwood*, 385 F.3d at 576.

The party alleging improper joinder bears a heavy burden. *See Sid Richardson Carbon & Gasoline Co. v. Interenergy Res., Ltd.*, 99 F.3d 746, 751 (5th Cir. 1996). To prevail, it must demonstrate "that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Smallwood*, 385 F.3d at 573. "If there is arguably a reasonable basis for predicting that the state law might impose liability on the facts involved, then there is no [improper] joinder." *Travis v. Irby*, 326 F.3d 644, 648 (5th Cir. 2003) (citation omitted). If there is a reasonable possibility of recovery on even one of Plaintiff's claims against an in-state defendant, the Court must remand the entire case to state court. *Gray ex. Rel. Rudd v. Beverly Enter.-Miss., Inc.*, 390 F.3d 400, 412 (5th Cir. 2004).

**III.    Discussion**

"Mississippi law concerning claims against insurance agents is complex." *Randle v. Primerica Life Ins. Co.*, No. 1:18-CV-141-SA-DAS, 2019 WL 968879, at *3 (N.D. Miss. Feb. 28, 2019) (citation omitted). As a general rule, "[a]n agent acting on behalf of a disclosed principal cannot be held liable for contractual liability." *Moore et al. v. Armstrong et al.*, No. 3:18-CV-239-CWR-FKB, Docket No. 19 at 6 (S.D. Miss Aug. 14, 2018) (citation omitted). Additionally, when agents are not parties to an insurance contract, they have "no implied duty of good faith and fair dealing with regard to the performance of the contract and, as such, cannot be held liable under a bad faith theory of recovery." *Id.* (citation omitted); *see also Bass v. California Life Ins. Co.*, 581 So. 2d 1087, 1090 (Miss. 1991) (holding that an adjuster or agent of an insurer "does not owe the insured a fiduciary duty nor a duty to act in good faith"). However, "[e]xceptions to this general rule have been made where plaintiff has made allegations which establish a separate and independent tort against the agent." *McAfee v. Allstate Ins. Co.*, No.

5

3:18-CV-300-HTW-LRA, 2019 WL 4783107, at *9 (S.D. Miss. Sept. 29, 2019) (collecting cases).

Wilson disclosed that she was acting on behalf of Progressive. Neither she nor Lighthouse were parties to the insurance policy. Accordingly, Goodwin's breach of contract and bad faith claims fail as a matter of law. The Court will consider the viability of Goodwin's remaining tort claims against Lighthouse and Wilson.

### A. Fraudulent Misrepresentation, Negligent Misrepresentation and Fraudulent Inducement Claims

Goodwin's claims of fraudulent and negligent misrepresentation and fraudulent inducement require Goodwin to prove, among other things, that he had the right to rely on Wilson's representations. *See Elchos v. Haas*, 178 So. 3d 1183, 1198 (Miss. 2015) (defining the elements of fraudulent misrepresentation); *Rhodes v. State Farm Fire & Cas. Co.*, No. 1:08-CV-674-HSO-RHW, 2009 WL 563876, at *6 (S.D. Miss. Mar. 4, 2009) (citing *Levens v. Campbell*, 733 So. 2d 753, 761 (Miss. 1999)) (defining the elements of negligent misrepresentation); *Lacy v. Morrison*, 906 So. 2d 126, 129 (Miss. Ct. App. 2004) (defining the elements of fraudulent inducement).

Defendants argue that under Mississippi law, Goodwin did not have a right to rely on Wilson's representations because he was in possession of declaration pages which said he was covered for only $7,500. Goodwin argues in his Reply that "[n]either the declaration pages nor the online policy limited Mr. Goodwin's coverage for property damage to [the] dump truck to the sum of $7,500.00." He also claims that "[t]here is a question of fact as to whether or not Goodwin received a policy containing terms that contradicted the agent's representations prior to his loss."

The parties' conflicting readings of the insurance policy raises an issue of contract interpretation. *See ACS Const. Co. of Mississippi v. CGU*, 332 F.3d 885, 888 (5th Cir. 2003) (citing *Clark v. State Farm Mut. Auto. Ins. Co.*, 725 So. 2d 779, 781 (Miss.1998)). The Court "must construe the policy as a whole and review the language of the policy giving operative effect to every provision in order to reach a reasonable overall result." *Id.* (citation omitted). If "the policy can be interpreted to have two or more reasonable meanings, then the policy is ambiguous." *Id.* (citation and quotations omitted). If the Court finds the policy is ambiguous, then the Court "must necessarily find in favor of coverage." *Id.* (citation omitted). However, the Court "must refrain from altering or changing a policy where terms are unambiguous, despite resulting hardship on the insured." *Id.* (citation omitted).

Goodwin's contract includes the online policy and the declaration pages. It is undisputed that Goodwin had access to the online policy and the first declaration page as of August 23, 2017. The declaration page and its subsequent revisions are unambiguous to the amount of coverage in the event of total loss.

Goodwin had a duty to read the policy under Mississippi's "duty to read" and "imputed knowledge" doctrines. *Mladineo v. Schmidt*, 52 So. 3d 1154, 1161 (Miss. 2010). He is imputed to have knowledge of the policy's contents once he had received them, beginning with the first declaration page received on August 23, 2017. Goodwin could not have reasonably relied on Wilson's assurances that the truck was covered for $20,000 in the case of total loss, given the contrary language in the declaration pages.

The duty to read and imputed knowledge doctrines, however, do not apply in several instances. One example, demonstrated in *Mladineo*, is when agents give bad advice to a potential insured, such as advising the insured to not get a certain kind of insurance they actually need. *See*

7

*id.* at 1163. In such cases, "actual knowledge and understanding of every word, phrase, and idea of the policy does not preclude the possibility that [an insured] may have bought more extensive coverage absent [an agent's] alleged negligence." *Id.*

The Mississippi Supreme Court also recognized an exception when an insured read the contract, questioned whether a clause was intended to be included, and was told – erroneously – that the clause would be removed. *See Godfrey, Bassett & Kuykendall Architects, Ltd. v. Huntington Lumber & Supply Co.*, 584 So. 2d 1254, 1259 (Miss. 1991). An insured's exercise of due diligence (i.e., the insured's initial review of the contract) but subsequent failure to read the contract after an agent's alleged misrepresentation is an omission a court is "authorized to excuse." *Id.* at 1259–60.

The doctrines will also not bar equitable relief to a plaintiff "who has executed a contract in reliance upon false representations made to him by the other contracting party." *Ross v. Citifinancial, Inc.*, 344 F.3d 458, 465 (5th Cir. 2003) (applying Mississippi law) (citations omitted).

Finally, the Mississippi Supreme Court recognizes an exception in cases of "fraud in factum," defined as "misrepresentation as to the nature of a writing that a person signs with neither knowledge nor reasonable opportunity to obtain knowledge of its character or essential terms." *Id.* (citation omitted).

Here, none of these exceptions apply. Goodwin does not allege that Wilson gave him bad advice, such as to not get the total loss coverage. Goodwin does not appear to have done any due diligence after he received the declaration pages – for example by asking Wilson to confirm the amounts for total loss coverage. Goodwin seeks damages only, not equitable relief, so he is ineligible for the equitable relief exception. The fraud in factum exception also "cannot apply

because [Goodwin does] not claim [he] misapprehended the character of the documents." *Id.* Goodwin only alleges that Wilson misled him as to the terms of his insurance policy, not into thinking he was entering a wholly different type of agreement.

Wilson may have misled Goodwin as to the terms of the insurance policy, and perhaps even included false information as to the requested coverage in the application, but Goodwin's reliance on Wilson's alleged misrepresentations became unreasonable under Mississippi law after he received the declaration pages which expressly contradicted Wilson's alleged representations. *Mladineo*, 52 So. 3d at 1164.[2] Under Mississippi law, Goodwin was imputed with knowledge of the declaration pages after receiving them and accordingly could not reasonably rely on Wilson's alleged misrepresentations.

Accordingly, Goodwin has no reasonable possibility of recovery on his claims of negligent misrepresentation, fraudulent misrepresentation, or fraudulent inducement.

### B. Negligence and Gross Negligence Claims

"The elements of a negligence claim are duty, breach of duty, proximate cause, and damages." *Id.* at 1162 (citation omitted). "An insurance agent must use that degree of diligence and care with reference thereto which a reasonably prudent [person] would exercise in the transaction of his own business." *Id.* (citation omitted). Agents cannot incur liability for simple negligence in their work on a claim, however, unless their "conduct constitutes gross negligence, malice, or reckless disregard for the rights of the insured." *See Gallagher Bassett Servs., Inc. v. Jeffcoat*, 887 So. 2d 777, 790 (Miss. 2004) (citation omitted).

---

[2] The Mississippi Supreme Court has distinguished cases in which an agent takes "charge of the application" and in so doing makes a misrepresentation to the insurer from cases in which the agent makes the alleged misrepresentation to the insured only. *Mladineo*, 52 So. 3d. at 1167. This distinction is only relevant in consideration of the insurer's liability for the agent's actions, however, not the agent's independent liability. *See id.*

9

Here, Goodwin alleges that Wilson – and, by extension, Lighthouse – filled out the insurance application and made "material false representations in order to induce him to purchase an insurance policy" that did not have the requested coverage. Goodwin also suggests that Wilson was negligent in her failure to procure the requested insurance coverage of $20,000. As a result, Goodwin claims injuries including "loss of income, emotional distress, and incurred medical bills."

Even if Wilson's alleged actions rise to the level of gross negligence – which is questionable – Goodwin is once again imputed with knowledge of the insurance policy by the duty to read doctrine. In *Bell v. Certain Underwriters at Lloyd's London*, the Mississippi Court of Appeals considered an action brought by insureds against a property insurer and broker for, among other things, negligence. 200 So. 3d 447, 452 (Miss. Ct. App. 2016). In *Bell*, the plaintiff called a broker to obtain insurance for property that included two buildings: a wood-framed barn and a metal building a few feet away from the barn. *Id.* at 448. The broker prepared an application for the insured, who never read the application before signing it. *Id.* at 449. The application sought coverage for the steel building only. *Id.* The subsequent insurance policy stated that only the steel building was covered in the event of total loss. *Id.* The insured never read the policy. *Id.* The Court of Appeals of Mississippi found that the plaintiffs' "claims for negligence and fraud were precluded by their failure to read the policy" which plainly stated the steel building was the only one covered, not the barn. *Id.* at 452.

Goodwin "would have noticed that the policy plainly did not" provide the requested coverage had he read it. *Id.* Under Mississippi law, Goodwin's failure to read the policy is considered the proximate cause of his injury. *Id.* As discussed above, no exceptions to the duty to

read and imputed knowledge doctrines apply. Thus, Goodwin's claims of negligence and gross negligence also fail as a matter of law.

### C. Procedural Error

Finally, Goodwin argues that there was a procedural flaw in removal because not all defendants joined in the removal petition, namely Wilson and Lighthouse. However, only the properly joined parties must consent to removal. *See* 28 U.S.C. § 1446(b)(2)(A). Wilson and Lighthouse were not required to join in the removal petition because they were improperly joined.

## IV. Conclusion

Having resolved all disputed questions of fact and ambiguities of law in favor of Goodwin, the non-removing party, the Court concludes that there is no reasonable possibility of recovery on any of Goodwin's claims against Wilson and Lighthouse. Therefore, Wilson and Lighthouse were improperly joined.

Accordingly, Goodwin's Motion to Remand is **DENIED** and his claims against Wilson and Lighthouse are **DISMISSED.**

Having considered the relevant law regarding Goodwin's claims, the Court questions whether the amount in controversy is sufficient for this Court to exercise subject matter jurisdiction over the remaining claims against Progressive. Accordingly, the parties are **directed to file supplemental briefing by January 13, 2020**, regarding whether the amount in controversy as to Goodwin's claims against Progressive is sufficient.

**SO ORDERED**, this the 10th day of December, 2019.

s/ Carlton W. Reeves
UNITED STATES DISTRICT JUDGE